## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JODY A. FURNARE,

    Plaintiff

v.

JAMES DZURENDA, et. al.,

    Defendants

Case No.: 3:18-cv-00014-RCJ-WGC

**Report & Recommendation of United States Magistrate Judge**

Re: ECF No. 103

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 103, 103-1 to 103-18, 105-1 to 105-6, 119-1 to 119-7.) Plaintiff filed a response (ECF No. 121) and Defendants filed a reply (ECF No. 122).

After a thorough review, it is recommended that Defendants' motion be granted.

### I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Dr. Romeo Aranas, Isidro Baca, Jayson Brumfield (erroneously named by Plaintiff as Bloomfield), James Dzurenda, Sheryl Foster,

Dr. Marsha Johns, Dr. Richard Long, Shannon Moyle (erroneously named by Plaintiff as Moil), Dr. Martin Naughton, David Tristan, and Travis Zufelt (erroneously named by Plaintiff as Zoofield).[1]

Plaintiff sued a defendant named Robostante, but this individual has never been served or appeared in this action. Plaintiff also named Does 1-5, but to date Plaintiff has not moved to amend to identify those defendants. therefore, it is recommended that Robostante and Does 1-5 be dismissed without prejudice.

The court screened the complaint and allowed Plaintiff to proceed with the following claims: (1) an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Aranas, Dr. Naughton, Dr. Johns, and Dr. Long based on allegations that they refused to provide Plaintiff medical care after he slipped and fell while working in NNCC's culinary department which resulted in pain and permanent damage to his right knee; (2) a retaliation claim against Dr. Long, Dr. Johns and Dr. Naughton based on allegations that they refused to provide him care because Plaintiff had filed grievances against Baca and Robostante; (3) a retaliation claim against Dzurenda, Foster, Baca, Moyle, Zufelt and Brumfield based on allegations that they terminated him from his employment because he filed grievances regarding unsafe prison conditions; (4) a First Amendment Free Exercise Clause and Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Baca, Moyle, Tristan, Dzurenda and Foster based on allegations that they denied him his religious property necessary to exercise and practice his sincere Wiccan religion; (5) an equal protection claim against Baca and Moyle based

---

[1] The motion for summary judgment states that it is also brought on behalf of Jorja Powers even though Plaintiff was not permitted to proceed on a claim against Powers. In the screening order, the court ordered the Clerk to add Powers, along with Clark, Foster, and Hines, as defendants because they had not been listed by Plaintiff in the caption, but the claim against Clark, Powers and Hines was dismissed with leave to amend and Plaintiff never amended.

on allegations that they imposed disparate treatment between Wiccan and other religions by allowing other religions to access their religious property while Plaintiff's religious property was confiscated. (ECF No. 3.)

Defendants move for summary judgment, arguing: (1) Plaintiff failed to properly exhaust his administrative remedies before filing suit; (2) Plaintiff received appropriate medical care; (3) they did not retaliate against Plaintiff; (4) confiscation of Plaintiff's property did not violate RLUIPA or the First Amendment; (5) none of the Defendants personally participated in the confiscation of Plaintiff's religious property; (6) Plaintiff's equal protection rights were not violated; and (7) Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

      In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

      If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

**A. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted).

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)). The ultimate burden of proof, however, remains with the defendant. *Id*.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative

remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

**B. Exhaustion Within NDOC**

NDOC's grievance process is set forth in Administrative Regulation (AR) 740. Inmates are expected to first try to resolve an issue informally through discussion with staff, and if unsuccessful, to proceed with filing grievances through three levels: informal, first and second levels. Failure to submit a timely grievance constitutes abandonment of the grievance at all levels. The prison has 45 days to respond to an informal grievance, and the inmate then has five days from receipt of the response to appeal to the first level. The prison has 45 days to respond to the first level grievance, and then the inmate has five days from receipt of the response to proceed to the second level grievance. The prison has 60 days to respond to the second level grievance. (ECF No. 103-5 (AR 740 effective March 7, 2017); ECF No. 103-6 (AR 740 effective August 30, 2017); ECF No. 103-7 (AR 740 effective November 20, 2018).)

It is considered an abuse of the inmate grievance procedure if an inmate, among other things, files a grievance that contains more than one appropriate issue per grievance, or if the claim or requested remedy changes or is modified from one level to another. (*Id*.)

**C. Analysis**

**1. Eighth Amendment vs Dr. Aranas, Dr. Naughton, Dr. Johns and Dr. Long**

Plaintiff alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Aranas, Dr. Naughton, Dr. Johns, Dr. Long based on allegations that they refused to provide Plaintiff medical care after he slipped and fell while working in NNCC's culinary department which resulted in pain and permanent damage to his right knee.

Defendants present evidence that Plaintiff submitted an informal level grievance requesting additional medical treatment for his right knee. Plaintiff submitted informal grievance 20063047156 on April 24, 2017, stating he had been ordered to see Dr. Long by Dr. Johns and Dr. Naughton. He had previously seen Dr. Long on June 1, 2016, about his right knee after he had been injured on March 30, 2016, and was supposed to see him again in September of 2016, but that did not occur. He asked why it was taking so long and that he be able to see an outside orthopedic surgeon. (ECF No. 103-8 at 4-6.) The informal level grievance was denied, stating that Plaintiff was scheduled to see Dr. Long. (ECF No. 103-8 at 3.)

According to Defendants records, Plaintiff did not proceed through the first or second grievance levels with respect to this grievance. (ECF No. 103-9 at 5.)

Plaintiff does not assert that he completed the grievance process for grievance 20063047156; however, Plaintiff points to grievance 200630021293 as exhausting his administrative remedies. His informal and first level grievance forms for grievance 20063021293 assert his claim that he slipped and fell in the culinary and that the floor was hazardous and he should have been provided with proper boots to work in the culinary. (ECF No. 121 at 86-91.)

The informal and first level grievances make no reference to Plaintiff's medical care claim. Instead they asked for the floor to be fixed, and that he be given boots to work in the culinary. The second level grievance, submitted July 2, 2016, did raise, for the first time, some complaints about his medical care. Specifically, the second level grievance stated that after the slip and fall, Plaintiff was eventually taken to medical and was given a wheelchair that was taken away after less than twenty-four hours. He was also given crutches, but then was told to go back to work. He saw Dr. Long on June 1, 2016, who told him the x-ray from March 31, 2016 showed torn cartilage and a broken patella. Dr. Long ordered extensive x-rays of the right knee, but they

8

had not been done to that point. Plaintiff then stated that he had hardly received any care for this injury, and even the Tylenol Dr. Long prescribed had not been given out. (ECF No. 121 at 95-97.)

The second level response denied the grievance, stating that the culinary floor was repaired and Warden Baca provided Plaintiff a solution for the boot issue: they may be purchased through the package program. (*Id*. at 92.)

Raising an issue for the first time in the second level grievance does not serve to properly exhaust Plaintiff's administrative remedies. Plaintiff must follow AR 740, which requires that an inmate raise an issue first in an informal level grievance, and then proceed through the first and second level grievances. Therefore, by its own terms, raising an issue for the first time in the second level grievance is improper. Moreover, AR 740 also provides that it is an abuse of the inmate grievance procedure to raise more than one issue in a grievance, or to change the claim or remedy requested at a subsequent grievance level. Plaintiff's grievance did both of those things. The second level grievance raised many issues, and it changed the claim being asserted as well as the remedy requested at the informal and first levels.

Plaintiff asserts that he is only able to raise one subject per grievance per week. It is unclear if he mentions this to argue that administrative remedies were unavailable to him as a result of this rule; however, he does not present evidence that he attempted to file a separate issue in a grievance and that it was rejected as untimely or for being duplicative, or for some other reason.

In sum, Defendants have demonstrated that Plaintiff failed to completely exhaust his administrative remedies as to his Eighth Amendment medical care claim. Plaintiff has not presented evidence to create a genuine dispute of material fact as to whether he properly

exhausted his administrative remedies in response to that evidence or that administrative remedies were unavailable to him. Therefore, Defendants' motion should be granted as to the Eighth Amendment medical care claim.

### 2. Retaliation vs Dr. Long, Dr. Johns and Dr. Naughton

Plaintiff asserts a retaliation claim against Dr. Long, Dr. Johns and Dr. Naughton based on allegations that they refused to provide him care because Plaintiff had filed grievances against Baca and Robostante.

According to Defendants' evidence, Plaintiff never filed a grievance asserting a retaliation claim concerning his medical care. (ECF No. 103-9.)

In his response, Plaintiff again points to grievance 200630021293. Neither the informal nor first level grievance mention anything about care provided by these physicians, let alone retaliatory conduct. In his second level grievance, Plaintiff did state that he had been told if he "did not want his medical getting worse, then [he] should drop [his] lawsuit and grievances." (ECF No. 121 at 97.) He went on to state that when he saw Dr. Naughton on June 2, 2016, Dr. Naughton said, "You don't need to sue NDOC, your knee is completely healed." (*Id*. at 98.) This was a day after Dr. Long had told him about the damage to his knee. (*Id*.)

As with the Eighth Amendment medical care claim, it was not sufficient for Plaintiff to raise the alleged retaliatory action for the first time in his second level grievance. The evidence before the court reflects that Plaintiff did not exhaust his administrative remedies as to the retaliation claim against Dr. Long, Dr. Johns, and Dr. Naughton. Plaintiff did not present evidence suggesting otherwise, or that administrative remedies were unavailable to him. Therefore, Defendants' motion should be granted with respect to this retaliation claim.

### 3. Retaliation vs Dzurenda, Foster, Baca, Moyle, Zufelt and Brumfield

Plaintiff asserts a retaliation claim against Dzurenda, Foster, Baca, Moyle, Zufelt and Brumfield based on allegations that they terminated him from his employment because he filed grievances regarding unsafe prison conditions.

Defendants submit evidence that Plaintiff never filed a grievance asserting retaliation regarding his loss of prison employment or transfer. (ECF No. 103-9.)

Plaintiff again points to grievance 200630021293. Neither the informal nor first level grievance mention Plaintiff's termination from his prison employment, let alone that it was done in retaliation for filing grievances. In the second level grievance, Plaintiff did state for the first time that he asked Zufelt for lighter duty due to pain from his fall in the kitchen. Zufelt said he was not hired for light duty, and it he was incapable of performing his duties he would have to be let go, and after that shift ended Plaintiff was let go from his job. (ECF No. 121 at 96.) Then, when he was at his classification for a job, Baca said, "Why should we give you a job so you can slip and fall and sue us again." (ECF No. 121 at 97.) Plaintiff also claimed in the second level grievance that he had been told to give up on his grievances and lawsuit. (*Id*. at 98.)

As with the last two claims, it was not sufficient for Plaintiff to raise his retaliation claim for the first time in his second level grievance. Plaintiff has not presented other evidence that he exhausted his administrative remedies as to this claim, or that administrative remedies were not available to him. Therefore, Defendants' motion should also be granted as to the retaliation claim against Dzurenda, Foster, Baca, Moyle, Zufelt and Brumfield.

**4. First Amendment Free Exercise and RLUIPA vs Baca, Moyle, Tristan & Dzurenda and Equal Protection vs Baca and Moyle**

Plaintiff asserts First Amendment Free Exercise Clause and RLUIPA claims against Baca, Moyle, Tristan, Dzurenda and Foster based on allegations that they denied him his religious property necessary to exercise and practice his sincere Wiccan religion. Plaintiff also asserts an equal protection claim against Baca and Moyle based on allegations that they imposed disparate treatment between Wiccan and other religions by allowing other religions to access their religious property while Plaintiff's religious property was confiscated.

Defendants argue that while Plaintiff did start the grievance process regarding his religious property, his second level grievance was submitted well past the deadline and is considered abandoned. In addition, they argue that beyond two cursory mentions of an allegedly religious item on one of the forms, he did not raise the issue of religion or religious discrimination in this grievance.

On November 30, 2017, Plaintiff submitted an informal level grievance 20063057910, stating that on June 20, 2017, he was transferred from NNCC to LCC, and his personal property box was deemed unauthorized. (ECF No. 103-11 at 3.)[2] Plaintiff talked to the property Sergeant Limburg about his property who tried to work it out. Limburg told Plaintiff he could have his property, but he was limited to ten items and ten books, and he would have to throw away the rest and fill out a brass slip to pay for shipment. Plaintiff filled out the brass slip, and four months passed and he wrote to find out about his property, and was told by Limburg that

---

[2] Defendants' submission contains only the first page of the informal level grievance. The inmate grievance history submitted by defendants indicates that Plaintiff's informal grievance continued for two pages, but does not summarize the entirety of the informal level grievance. (ECF No. 103-9 at 3.) Plaintiff submitted the remainder of the grievance. (ECF No. 121 at 43-46.)

Limburg does not handle it. Plaintiff talked to Officer Silver in property and was told to write a grievance. He had not received a form with an itemized list of property, but only an unauthorized form. He asked for his property to be shipped to him. (ECF No. 121 at 43-46.)

The grievance was denied on January 22, 2018, stating that under AR 711.01.3.A, inmates may possess personal property not to exceed that which will fit into one approved footlocker and one fire retardant box. No other type of box is authorized. Excessive authorized property shall be confiscated when transferred to another facility. Plaintiff was advised that the box he chose to place his property items in prior to his transfer was deemed unauthorized, and so the items inside the box are unauthorized. He was told to choose one of the following options: (1) ship or mail it out at his own expense; (2) have the property destroyed by the property officer; or (3) donate the property to charity. (ECF No. 103-11 at 2.)

Defendants do not submit the first level grievance itself, but Plaintiff does provide it with his response. The first level grievance is dated March 24, 2018. Plaintiff reiterated that he had not received his property box, which was the only box he had ever had. He again asked for his property to be shipped to him at LCC, and if not, to be provided with an inventory of his property. (ECF No. 121 at 50-51.)

The inmate grievance history notes indicate that the first level grievance was sent from LCC to NNCC on March 26, 2018, and received by NNCC on April 4, 2018. (ECF No. 103-11 at 3.) The response has a transaction date of August 9, 2018 (though notes indicate it was mailed in October, and Plaintiff signed for it on October 25, 2018), and states that the oversized box was unauthorized by Central Transportation as only a 10 x 18 x 10 inch fireproof box is authorized. (*Id.*; ECF No. 121 at 49.)

On October 6, 2018, Plaintiff filed a second level grievance, stating that he was transferred from NNCC to LCC on June 20, 2017, and he had with him a green bag, one large personal box, and two legal boxes. He got his green bag and two legal boxes, but the personal box was deemed "unauthorized." Property Sergeant Silva tried to resolve this, and Plaintiff event sent a brass slip to have it mailed at his expense, but nothing happened. He complained that Sergeant Clark had responded to his informal and first level grievances, when the grievance had been written against Clark, and alluded to a delay in getting the responses back. He claimed that his caseworker told him to proceed to the second level since he had not received the prior level grievances back. He went on to state that his "whole life" was in the personal box, including his religious items, books and ritual items. He claimed that the unauthorized form was not completely filled out and an inventory of the box was not completed. He requested to receive his property in full, as well as an apology from Clark. (ECF No. 103-10 at 3-13; ECF No. 121 at 54-64.)

Lisa Walsh sent Plaintiff an improper grievance memorandum dated November 1, 2018. Stating that he was missing his informal grievance/response and first level grievance/response, which should be attached and resubmitted. He was also advised that continuance forms should not exceed more than two pages per grievance. (ECF No. 103-10 at 2; ECF No. 121 at 53.) Plaintiff signed the memorandum November 19, 2018. (ECF No. 121 at 53.)

On November 19, 2018, Plaintiff submitted another second level grievance for grievance 20063057910, stating that he tried to resolve this at the second level. Sergeant Clark had ten days to fill out the unauthorized property notification form and did not do so, and Plaintiff claimed that only the box was unauthorized and not the items in the box. He claimed that twice Sergeant Clark had intercepted and made decisions on the informal and first level grievances. He asked for

replacement of his religious property, his book and his electronic and electrical property, and for a monetary settlement. (ECF No. 103-13 at 3; ECF No. 121 at 80-82.)

Lisa Walsh sent Plaintiff an improper grievance memorandum dated January 31, 2019, stating that an inmate must file an appeal within five calendar days of receipt of the response. Plaintiff signed his first level grievance response on October 25, 2018, but did not sign the second level grievance until November 19, 2018, and was beyond the five day limit so the claim was considered abandoned. (ECF No. 121 at 79.)

Putting aside whether or not Plaintiff's second level grievance was untimely and whether or not it was properly or improperly rejected for not containing the prior level grievances (which he had explained he did not have), the grievance did not put prison officials on notice that Plaintiff was claiming his ability to practice his religion was burdened or that he was being discriminated against because of his Wiccan faith. The grievance is focused on the return of his property box and the items in it. In fact, the grievance only briefly references that there were religious items in the box, and that was not until the second level grievance. Nothing in the grievance discusses Plaintiff's Wiccan faith or his ability to practice his faith, or a belief that he was being discriminated against based on his faith when his property was not returned to him after his transfer. Therefore, Defendants' motion should be granted as to the Free Exercise Clause, RLUIPA, and equal protection claims.

Even if Plaintiff had properly exhausted his administrative remedies as to these claims, Defendants would still be entitled to summary judgment. Defendants point to Plaintiff's grievances as evidence that it was Sergeant Clark, and not Defendants, who was involved in deeming Plaintiff's property box unauthorized and thereby denying him access to his religious property items.

15

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id.* (citations omitted).

Plaintiff argues that he tried to amend to add the defendants who were involved.

Plaintiff did file a motion for leave to amend; however, in that motion he sought to include additional medical care claims. The motion was denied without prejudice because Plaintiff did not include a proposed amended pleading, and Plaintiff did not renew his motion. (ECF Nos. 91, 92.)

There is no evidence that the named Defendants personally participated in the alleged constitutional violation; therefore, summary judgment is appropriately entered in Defendants' favor with respect to the Free Exercise Clause, RLUIPA, and equal protection claims on this additional basis.

In light of the court's conclusions, it need not reach Defendants' remaining arguments.

Finally, the court notes that while unexhausted claims are generally dismissed without prejudice[3], Plaintiff could not timely grieve these claims under AR 740; therefore, the dismissal of the claims for failure to exhaust should be with prejudice.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **DISMISSING WITHOUT PREJUDICE** Robostante and Does 1-5; and

---

[3] *See Wyatt*, 315 F.3d at 1120, *overruled on other grounds by Albino*, 747 F.3d 1162.

(2) **GRANTING** Defendants' motion for summary judgment, dismissing Plaintiff's claims with prejudice, and entering judgment in favor of Defendants.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 8, 2021

*William G. Cobb*
William G. Cobb
United States Magistrate Judge